IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SCOTT WAGGONER**, | Case No. 3:23-cv-1505-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **AMERICAN MEDICAL RESPONSE NORTHWEST, INC.**, | |
| Defendant. | |

Caroline Janzen, JANZEN LEGAL SERVICES, LLC, 4550 SW Hall Boulevard, Beaverton, OR 97005. Of Attorneys for Plaintiff.

John A. Berg and Colleen O. Muñoz, LITTLER MENDELSON PC, 1300 SW Fifth Avenue, Wells Fargo Tower, Suite 2050, Portland, OR 97201. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Scott Waggoner brings this lawsuit against his former employer American Medical Response Northwest, Inc. ("AMR"). Plaintiff's Complaint (ECF 1) asserts two claims for unlawful employment discrimination. Plaintiff first alleges a violation of Oregon Revised Statutes (ORS) § 659A.030. Plaintiff next asserts a violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. Plaintiff contends that AMR terminated his employment after he refused to comply with AMR's COVID-19 vaccine mandate on grounds that receiving the

COVID-19 vaccine conflicts with his sincerely held religious beliefs. AMR has moved to dismiss Plaintiff's Complaint, arguing that Plaintiff not only declined to take the COVID-19 vaccine, as required by AMR's company policy, Plaintiff also admittedly refused to comply with the terms of the religious exemption granted by AMR, which required Plaintiff to wear an N95 mask. Thus, under Plaintiff's own allegations, AMR argues, it accommodated any conflict between Plaintiff's religion and the terms and conditions of his employment.

**STANDARDS**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a

probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation

marks omitted).

## REGULATORY BACKGROUND

On August 13, 2021, amid the surge in COVID-19 cases, the Governor of Oregon issued

Executive Order 21-29 (the "EO"). In that EO, the Governor explained that the 2021 summer

surge in COVID-19 infections "is imperiling the state health system's ability to manage not just

COVID-19 patients, but also those who require specialized medical care after car accidents, heart

attacks, and other medical emergencies" and that "employer vaccination requirements have

become an important tool" for managing the surge. The EO required that state executive-branch

employees be "fully vaccinated" against COVID-19 by the later of October 18, 2021, or six

weeks after the date that the Food and Drug Administration ("FDA") approves a COVID-19

vaccine. The EO allowed for exceptions for individuals unable to be vaccinated due to disability,

a qualifying medical condition, or a sincerely held religious belief.

After the FDA approved the COVID-19 vaccine on August 23, 2021, the Oregon Health

Authority ("OHA") adopted similar vaccination rules. One of those rules, then-codified at

Oregon Administrative Rule ("OAR") 333-019-1010, is known as the "Healthcare Order."[1]

---

[1] The OHA suspended OAR 333-019-1010 in mid-2023 and repealed it effective June 30, 2023.

Originally adopted on August 25, 2021, and then modified on September 1, 2021, the Healthcare

Order explained, in relevant part:

> Healthcare providers and healthcare staff have contact with
> multiple patients over the course of a typical day and week,
> including providers that provide care for people in their homes.
> Individuals cared for in these settings are more likely than the
> general public to have conditions that put them at risk for
> complications due to COVID-19. COVID-19 variants are running
> through the state's unvaccinated population and causing an
> increase in breakthrough cases for those who are fully vaccinated.
> This rule is necessary to help control COVID-19, protect patients,
> and to protect the state's healthcare workforce.

OAR 333-019-1010(1) (effective Sept. 1, 2021). Based on these concerns, the Healthcare Order

provided that after October 18, 2021, "A health care provider or healthcare staff person may not

work, learn, study, assist, observe, or volunteer in a healthcare setting unless they are fully

vaccinated or have provided documentation of a medical or religious exception." OAR 333-

019-1010(3)(a) (Sept. 1, 2021).[2]

---

[2] The Healthcare Order defined "healthcare providers and healthcare staff" as:

> [I]ndividuals, paid and unpaid, working, learning, studying,
> assisting, observing or volunteering in a healthcare setting
> providing direct patient or resident care or who have the potential
> for direct or indirect exposure to patients, residents, or infectious
> materials, and includes but is not limited to any individual licensed
> by a health regulatory board as that is defined in ORS 676.160,
> unlicensed caregivers, and any clerical, dietary, environmental
> services, laundry, security, engineering and facilities management,
> administrative, billing, student and volunteer personnel.

OAR 333-019-1010(2)(d)(A) (Sept. 1, 2021). The Healthcare Order defined "healthcare setting"

as:

> [A]ny place where health care, including physical or behavioral
> health care[,] is delivered and includes, but is not limited to any
> health care facility or agency licensed under ORS chapter 441
> or 443, such as hospitals, ambulatory surgical centers, birthing
> centers, special inpatient care facilities, long-term acute care

In late 2021, the United States Secretary of Health and Human Services (the "Secretary"), who administers the Medicare and Medicaid programs, issued an interim final rule amending the existing conditions of participation in Medicare and Medicaid to add a new requirement—that facilities ensure that their covered staff are vaccinated against COVID-19. Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61555, 61616-27 (Nov. 5, 2021). The rule required providers to offer medical and religious exemptions and did not cover staff who teleworked full-time. *Id.* at 61571-72. The rule further provided that a facility's failure to comply with the vaccination requirement may lead to monetary penalties, denial of payment for new admissions, and ultimately termination of participation in the programs. *Id.* at 61574. As explained by the Supreme Court, "[t]he Secretary issued the rule after finding that vaccination of healthcare workers against COVID-19 was 'necessary for the health and safety of individuals to whom care and services are furnished.'" *Biden v. Missouri*, 595 U.S. 87, 91 (2022) (citing 86 Fed. Reg. at 61561). The Supreme Court upheld the Secretary's rule as within the Secretary's authority provided by Congress. *Id.* at 93. The Supreme Court added:

> COVID-19 is a highly contagious, dangerous, and—especially for Medicare and Medicaid patients—deadly disease. The Secretary of

---

facilities, inpatient rehabilitation facilities, inpatient hospice facilities, nursing facilities, assisted living facilities, residential facilities, residential behavioral health facilities, adult foster homes, group homes, pharmacies, hospice, vehicles or temporary sites where health care is delivered (for example, mobile clinics, *ambulances*), and outpatient facilities, such as dialysis centers, health care provider offices, behavioral health care offices, urgent care centers, counseling offices, offices that provide complementary and alternative medicine such as acupuncture, homeopathy, naturopathy, chiropractic and osteopathic medicine, and other specialty centers.

OAR 333-019-1010(2)(e)(A) (Sept. 1, 2021) (emphasis added).

> Health and Human Services determined that a COVID-19 vaccine
> mandate will substantially reduce the likelihood that healthcare
> workers will contract the virus and transmit it to their patients.
> 86 Fed. Reg. 61557-61558. He accordingly concluded that a
> vaccine mandate is "necessary to promote and protect patient
> health and safety" in the face of the ongoing pandemic. *Id.*,
> at 61613.

*Id.* In mid-2023, the Secretary issued a new rule withdrawing the vaccination requirement. Policy

and Regulatory Changes to the Omnibus COVID-19 Health Care Staff Vaccination

Requirements, 88 Fed. Reg. 36485, 36488 (June 5, 2023) (effective Aug. 4, 2023).

## FACTUAL BACKGROUND

In his Complaint (ECF 1), Plaintiff alleges that he began working for AA Ambulance

service in 1987 and that AA Ambulance service was later acquired by AMR. Compl. ¶ 1.

Plaintiff worked for AMR until AMR terminated Plaintiff's employment on October 18, 2021.

*Id.* ¶ 13. Plaintiff worked for AMR (or its predecessor) as a dispatcher, EMT, trainer, and

controller and had received multiple awards and commendations. *Id.* Plaintiff states that he is a

devoutly religious individual who adheres to principles of a Christian faith and is dedicated to

following the tenets of his faith. Compl. ¶ 2.

Plaintiff alleges that the "COVID-19 pandemic manifested in Oregon in late February of

2020." *Id.* ¶ 8. According to Plaintiff, AMR at first did not require "face masks" be worn, and

Plaintiff says that he used a "face shield." *Id.* ¶ 9. At some point thereafter, Plaintiffs asserts,

AMR required its employees to wear a face mark but that "exacerbated his preexisting anxiety

and post-traumatic stress disorder (PTSD)." Plaintiff alleges that he "took medical leave for a

few months in 2020 due to his PTSD." *Id.* Plaintiff adds that after returning to work from his

medical leave, "[f]or eighteen months, Plaintiff scrupulously followed all rules and regulations to

protect against infection, which included the wearing of personal protective equipment (PPE),

handwashing and other hygiene protocols, social distancing when possible, and quarantining when necessary." *Id*. ¶ 11.

In the summer of 2021, AMR announced that it would be implementing and enforcing a COVID-19 vaccine mandate in the workplace. *Id*. ¶ 12. AMR informed its employees that individuals who had religious beliefs that conflicted with taking the vaccine could apply for a religious exception. *Id*. Plaintiff states that he has serious objections to taking the vaccine because it would "constitute violating his bodily integrity and tainting the purity of his body," which he states is contrary to "his interpretation of his faith in God and the Bible." *Id*. Plaintiff also states that he believes that life begins at conception and that the COVID-19 vaccines were either tested on or manufactured with aborted fetal cells. *Id*. For this additional reason, Plaintiff believed that he could not in good conscience take the COVID-19 vaccine. *Id*. On October 9, 2021, Plaintiff presented to AMR his written request for a religious exception. *Id*.

AMR accepted Plaintiff's request for a religious exemption from AMR's COVID-19 vaccination requirement, but AMR's policy required unvaccinated employees to wear an N95 mask while at work. *Id*. ¶ 13. After Plaintiff told AMR that he could not wear an N95 mask because of his PTSD, AMR placed Plaintiff on temporary unpaid leave. *Id*. AMR terminated Plaintiff's employment on October 18, 2021. *Id*.

Plaintiff alleges that AMR's requirement that its unvaccinated employees wear an N95 mask while at work was *not* done "to protect against an unacceptable health and safety risk" but instead was "discriminatory against Plaintiff based on his sincerely held religious beliefs and retaliation for expressing those beliefs." *Id*. ¶ 16. Plaintiff contends that "[t]here were reasonable accommodations available to the Defendant with no undue burden on it that it failed to pursue."

*Id.* Plaintiff asserts that AMR "took the most drastic employment action it could against Plaintiff

with an unlawful discriminatory intent." *Id.*

## DISCUSSION

### A. Legal Framework

Under Title VII, it is unlawful for a covered employer "to discharge any individual . . .

because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie*

case for religious discrimination, the employee must demonstrate:

> (1) she had a bona fide religious belief, the practice of which
> conflicted with an employment duty; (2) she informed her
> employer of the belief and conflict; and (3) the employer
> threatened her or subjected her to discriminatory treatment,
> including discharge, because of her inability to fulfill the job
> requirements.

*Tiano v. Dillard Dept. Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998) (citation omitted). If the

employee succeeds in establishing a *prima facie* case, the burden shifts to the employer to prove

that it either "initiated good faith efforts to accommodate reasonably the employee's religious

practices or that it could not reasonably accommodate the employee without undue hardship."

*Id.*[3]

Title VII, however, does not "impose a duty on the employer to accommodate at all

costs"; rather, the employer must offer only a "reasonable" accommodation. *Ansonia Bd. of*

*Educ. v. Philbrook*, 479 U.S. 60, 70, (1986); *see also Am. Postal Workers Union, S.F. Local v.*

*Postmaster Gen.*, 781 F.2d 772, 777 (9th Cir. 1986) ("[A] reasonable accommodation need not

---

[3] State law is similar. ORS § 659A.030 provides that it is an unlawful employment
practice for an employer to discriminate against an individual in the terms and conditions of
employment because of a person's religion, among other things. ORS § 659A.030(1)(a). Claims
brought under this statute are analyzed the same way as claims brought under Title VII. *See*
*Dawson v. Entek Int'l*, 630 F.3d 928, 934 (9th Cir. 2011); *Henderson v. Jantzen, Inc*., 79 Or.
App. 654, 657 (1986).

be on the employee's terms only."). An accommodation that "eliminates the [alleged] conflict between employment requirements and religious practices" will satisfy that requirement, provided that the accommodation is not itself discriminatory. *Ansonia*, 479 U.S. at 70-71 (holding that unpaid leave for holy day observance "would generally be a reasonable [accommodation]" but would not be reasonable if *paid* leave was available for all purposes except religious ones). When an employer proposes an accommodation that effectively eliminates the alleged religious conflict, "the inquiry under Title VII reduces to whether the accommodation reasonably preserves the affected employee's employment status." *Am. Postal Workers Union*, 781 F.2d at 776-77.

If a proposed accommodation eliminates the employee's religious conflict and the employee rejects the accommodation "solely on secular grounds," Title VII does not require the employer to accept an alternative proposed accommodation. *Id.* at 776. "[W]here the employer has. . . reasonably accommodated the employee's *religious* needs, the [Title VII] inquiry is at an end." *Ansonia*, 479 U.S. at 68 (emphasis added); *see also Breshears v. Or Dep't of Transp.*, 2023 WL 136550, at *3-4 (D. Or. Jan. 9, 2023) (holding that when an employee objected to a vaccination requirement on religious grounds and the employer offered an accommodation of masking, which the employee rejected on medical grounds, there may be a disability discrimination claim, but, under *Ansonia*, the employee failed to state a Title VII religious discrimination claim). "[T]he burden to allege a conflict with religious beliefs is fairly minimal." *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023). But that "does not mean that courts must take plaintiffs' conclusory assertions of violations of their religious beliefs at face value." *Id.* (citing *Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1016-17 (9th Cir. 2016)).

**B. Application**

As noted, Plaintiff alleges that he is a devoutly religious individual who adheres to principles of a Christian faith, is dedicated to following the tenets of his faith, and has serious objections to taking the vaccine because it would "constitute violating his bodily integrity and tainting the purity of his body," which Plaintiff states is contrary to "his interpretation of his faith in God and the Bible." Plaintiff adds that he believes that life begins at conception and that the COVID-19 vaccines were either tested on or manufactured with aborted fetal cells. In its motion to dismiss, Defendant does *not* argue that Plaintiff pleads only conclusory statements about his religious beliefs.

Instead, Defendant argues that Plaintiff fails to state a claim for religious discrimination because Plaintiff "not only declined to take the COVID-19 vaccine, as required by company policy, he also admittedly refused to comply with the terms of the religious exemption granted by AMR" which required the wearing of an N95 mask while at work. ECF 8 at 2. Defendant states that it proposed an accommodation that effectively eliminates Plaintiff's alleged religious conflict, thus reducing the inquiry "to whether the accommodation reasonably preserves the affected employee's employment status." *Id*. at 5.

In response, Plaintiff argues that federal and state anti-discrimination laws "require both *recognition* of sincerely held religious beliefs and reasonable accommodation." ECF 9 at 4, citing *Peterson v. Hewlett-Packard Co*., 358 F.3d 599, 606 (9th Cir. 2004) (emphasis added). Plaintiff misreads *Peterson*. There is no requirement stated in *Peterson* that an employer "recognize" an employee's statement that he sincerely holds a religious belief. Instead, Peterson explains: "A claim for religious discrimination under Title VII can be asserted under several different theories, including disparate treatment and failure to accommodate." *Id*. at 603. For a disparate treatment claim, a plaintiff must adequately allege that his job performance was

satisfactory and that his termination was discriminatory. *Id.* "A plaintiff who fails to raise a reasonable inference of disparate treatment on account of religion may nonetheless show that his employer violated its affirmative duty under Title VII to reasonably accommodate employees' religious beliefs." *Id.* at 606. It is unclear whether Mr. Waggoner is alleging disparate treatment, failure to accommodate, or both. Accordingly, the Court will assume that he is alleging both.

Regarding Plaintiff's disparate treatment theory, Mr. Waggoner alleges that AMR's requirement that its unvaccinated employees wear an N95 mask while at work was "discriminatory against Plaintiff based on his sincerely held religious beliefs and retaliation for expressing those beliefs." Compl. ¶ 16. He adds that AMR "took the most drastic employment action it could against Plaintiff with an unlawful discriminatory intent." *Id.* These allegations, however, are merely conclusory. Mr. Waggoner alleges no facts from which it may be plausibly inferred that AMR held any religiously discriminatory animus against either Mr. Waggoner or his religion. In the absence of such a pleading, the Court will disregard Plaintiff's conclusory assertions. *See Ashcroft*, 556 U.S. at 678-79 (holding that a court need not credit a plaintiff's legal conclusions that are couched as factual allegations).

Regarding Plaintiff's failure to accommodate theory, AMR points out that Plaintiff's Complaint demonstrates that that AMR offered to accommodate and relief Mr. Waggoner's religious conflict by giving him the alternative to wear an N95 mask while at work. Mr. Waggoner declined that alternative, explaining that doing so would exacerbate his "preexisting anxiety and post-traumatic stress disorder." Compl. ¶ 11. That, however, is not a *religious* ground to reject the proposed alternative, and, as noted, Mr. Waggoner has not alleged a claim of disability discrimination.

PAGE 11 – OPINION AND ORDER

In response to AMR's motion, Plaintiff also cited the Supreme Court's recent decision in of *Groff v. DeJoy*, 600 U.S. 447, 143 S. Ct. 2279 (2023). That case, however, has no application here because AMR does not argue that accommodating Mr. Waggoner's asserted religious conflict would present an undue burden for AMR. Instead, AMR argues, based on Plaintiff's own Complaint, that it offered Mr. Waggoner a reasonable accommodation of his religious conflict.

As explained by the Supreme Court, "Title VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of their employees *unless* doing so would impose an 'undue hardship on the conduct of the employer's business.'" *Groff*, 600 U.S. 453-54, quoting 42 U.S.C. § 2000e(j) (emphasis added). In that case, the Supreme Court elaborated on the meaning of "undue hardship." That, however, is not the defense that AMR asserts here.

As noted, and as alleged in the Complaint, AMR offered Mr. Waggoner the accommodation of wearing an N95 mask. There is no dispute that had Mr. Waggoner accepted that accommodation, his *religious* conflict would have been resolved. Instead, he alleges that he had a valid non-religious ground for rejecting the offered accommodation, namely his PTSD. But the caselaw is clear that Title VII only requires an employer to offer a "reasonable" accommodation. *Ansonia*, 479 U.S. at 70. Moreover, "a reasonable accommodation need not be on the employee's terms only." *Am. Postal Workers Union,* 781 F.2d at 777. An accommodation that "eliminates the [alleged] conflict between employment requirements and religious practices" will satisfy that requirement, provided that the accommodation is not itself discriminatory. *Ansonia*, 479 U.S. at 70-71.

Plaintiff does not allege, other than in a conclusory fashion, that AMR's proposed alternative was unreasonable or itself discriminatory. Plaintiff asserts that "[t]here were

reasonable accommodations available to the Defendant with no undue burden on it that it failed to pursue." Compl. ¶ 16. Plaintiff does not expressly identify those in paragraph 16 of his Complaint, but the Court will assume that Plaintiff was referring to "handwashing and other hygiene protocols, social distancing when possible, and quarantining when necessary," which Plaintiff described in paragraph 11. Plaintiff, however, does not allege facts from which it may be plausibly inferred that "handwashing and other hygiene protocols, social distancing when possible, and quarantining when necessary" make AMR's offered accommodation of wearing N95 masks in lieu of being vaccinated an unreasonable accommodation. In the absence of plausible allegations to that effect, the Court disregards Plaintiff's conclusory assertion that AMR's offered accommodation was unreasonable.

## CONCLUSION

The Court GRANTS Defendant's Motion to Dismiss Plaintiff's Complaint. ECF 8. Plaintiff may file an amended complaint on or before September 11, 2025, if Plaintiff believes that he can cure the deficiencies identified in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 27th day of August, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge